Frederick v. Henderson.

FREDERICK, *Plaintiff in Error*, v. HENDERSON *et al.*

1. **Conveyance of Homestead:** REFORMATION OF DEED : NOTICE. A court of equity will not reform a deed by a widow conveying all of her interest in her homestead estate so as to convey only her life interest in the same, unless she shows by clear, strong, and unequivocal evidence that, at the time she made the deed, not only that she intended to convey but a life interest, but that her grantee intended to buy only a life interest in the land ; and where her grantee has sold the land to a third party, she must show by the same sort of evidence that his vendee had knowledge of the facts.

2. ———— : ———— : ————. The evidence in this case held *insufficient* to entitle plaintiff to the relief sought.

*Error to Caldwell Circuit Court.*—HON. E. J. BROADDUS, Special Judge.

AFFIRMED.

*Mansur & McLaughlin* for plaintiff in error.

The plaintiff in error, on the death of her husband, became the owner in fee of the land in suit. *Skouten v. Wood*, 57 Mo. 380. The defendants cannot claim to be innocent purchasers. One of them was the administrator of the estate of William H. Frederick, the deceased husband of the plaintiff, and as such had the homestead of the plaintiff set apart to her on his petition in the probate court, and then, as such administrator, he sold the land to his codefendant, William H. Crawford, under the order of the probate court, subject to such homestead interest. Laboring under the impression that her interest in the property was limited to a life estate, the plaintiff sold it for less than one-fourth of its real value. That courts of equity will grant relief in cases of this character is sustained by the following authorities : *Summers*

*v. Coleman*, 80 Mo. 488 ; note to *Black v. Ward*, 15 Am. Rep. 171, 175, 177, 183, 184 ; *Harney v. Charles*, 45 Mo. 157, where the court expresses itself as follows : "It is doubtless true as a general proposition that courts of equity will only grant relief from mistakes of fact, and that all are supposed to know the law, yet it is also true that in peculiar circumstances equity will relieve as well from mistakes of law. In every case there is such special equity as to make it an exception to the rule, and the exceptions are so numerous that the rule is by no means a universal one," and citing 1 Story's Eq., secs. 116 to 139 ; see also Perry on Trusts (Ed. of 1872), sec. 184 ; *Haven v. Foster*, 26 Mass. 111 ; *Young v. Coleman*, 43 Mo. 179 ; *Griffith v. Townley*, 69 Mo. 13, and cases cited ; *Irick v. Fulton's Ex'rs*, 3 Gratt. 193 ; *Chapmin v. Layton*, 1 Edwards Chy. 467 ; *Stapylton v. Scott*, 13 Ves. 82 ; note to *McIver v. Walker*, 9 Cranch, 173 ; note to *McFerrin v. Taylor*, 3 Cranch, 270 ; note to *Hunt v. Rousmaniere*, 8 Wheaton, 174 ; note to *Smith v. McIver*, 9 Wheaton, 532 ; 18 Albany Law Jour. 2 ; *Macknet v. Macknet*, 29 N. J. Eq. 54 ; 2 Rapalje & Lawrence's Law Dic., sec. 4, p. 829, under title "Mistake ;" 3 Waits' Actions and Defenses, 163 to 166 ; *Leitsendorfer v. Delphy*, 15 Mo. 166 ; *White v. McPheters*, 75 Mo. 286, 294 ; 15 Cent. Law Jour. 318 ; 13 N. W. Rep. 323.

*Crosby Johnson* for defendants in error.

(1) The defendant was an innocent purchaser for value without notice. He had no such information of plaintiff's mistake as to put him upon inquiry. Suspicion of notice is not sufficient. The inference of a fraudulent intent affecting the conscience must be founded on clear and strong circumstances, in the absence of actual notice. The inference must be necessary and unquestionable. 4 Kent's Com. *169, 170, 172 ; *Vest v. Michie*, 31 Am. Rep. 722 ; 31 Gratt. 149 ; *Brown v. Bar-*

*rett*, 73 Mo. 275; *Muldrow v. Robinson*, 58 Mo. 331; *Speck v. Riggin*, 40 Mo. 405; *Emmons v. Maupin*, 47 Mo. 304; *Le Neve v. Le Neve*, 2 Eq. Lead. Cases, 109. "The notice must be given by a person interested in the property and in the course of the treaty. Vague reports from persons not interested in the property will not affect the purchaser's conscience; nor will he be bound by notice in a previous transaction which he may have forgotten." Sugden on Vendors; *Cornet v. Blackburn*, 61 Mo. 118; *White v. Fisher*, 50 Am. Rep. 287; *Harrison v. Cochelin*, 23 Mo. 117. (2) The equities of plaintiff are not superior to those of defendant, and the deed must stand. Crawford paid for the two deeds all the land was worth and the money was used to pay debts. He was not trying to speculate at her expense or that of the estate. Where one of two innocent parties must sustain a loss, it must fall on him who is most careless, or whose acts have most contributed to the loss. *Marham v. O'Conner*, 21 Am. Rep. 249; *Raley v. Williams*, 73 Mo. 310; *Pilkington v. Ins. Co.*, 58 Mo. 172; *Sweeny v. Mallory*, 62 Mo. 485. She is estopped from disputing Crawford's title by administrator's deed. Bigelow on Estop. 484, 485, 503, 509. (3) Plaintiff allowed defendants to expend large sums in making improvements without disclosing her claim, and she is estopped from claiming the property. *Rutherford v. Tracey*, 48 Mo. 325; *Raley v. Williams*, 73 Mo. 310. Her ignorance was the result of gross negligence and she is not relieved from the estoppel. Bigelow on Estop. 540, 548. (4) Equity will not relieve against a mistake of law pure and simple. 2 Pomeroy's Eq., sec. 842; 18 Cent. Law Jour. 7. "The circumstances attending the making of the contract must be such as to excite suspicion of fraud, imposition, misrepresentation, or undue influence, on one side, and imbecility, credulity, or blind confidence, on the other." *Faust's Adm'r v. Biener*, 30 Mo. 414; *Bailey v. Jessup*, 72 Mo. 184; *Griffith v.*

*Townley*, 69 Mo. 13. "The general and salutary rule" is to deny relief against mistakes of law. *Griffith v. Townley, supra; Snell v. Ins. Co.*, 98 U. S. 85. The exceptions to that rule must "have something peculiar in their character." *Hunt v. Rousmaniere*, 1 Pet. 15; *Bank v. Daniel*, 12 Pet. 32. "A mere mistake of law stripped of all other circumstances constitutes no ground for the reformation of written contracts." *Snell v. Ins. Co., supra.*

NORTON, C. J.—William H. Frederick, on the third of March, 1875, died intestate, owning in Caldwell county one hundred and sixty acres of land, and leaving a widow, who is the plaintiff in this suit. Defendant, Henderson, administered on the estate, and filed his petition in the probate court to have the homestead of plaintiff in said land set apart to her, and for the sale of the land for the payment of debts. Commissioners were appointed, who set apart ninety acres of said land as the homestead of plaintiff; their report was approved and the administrator ordered to sell the land subject to the homestead right of the widow; in obedience to this order the land was sold on the twenty-fourth of June, 1878, to defendant, Crawford, for the sum of five hundred and five dollars. Afterwards, on the twelfth of June, 1879, plaintiff sold and conveyed by quit-claim deed her interest in said land to said Crawford for three hundred and thirteen dollars; and thereafter, in March, 1880, Crawford sold and conveyed said lands to defendant, Henderson. On the ninth of April, 1883, plaintiff commenced this suit, and avers in her petition that, at the time she made the quit-claim deed, she intended to sell, and Crawford intended to buy, only her life estate in said land, and that both of them believed at the time that plaintiff only had a life estate in said homestead, and that defendant, Henderson, bought said land of Crawford with full notice and knowledge of the fact,

that, in selling her interest in said land to defendant, Crawford, she intended to sell and convey only a life estate therein. The prayer of the petition is, that the quit-claim deed to Crawford be so reformed as to show that she only conveyed to him a life estate in the premises.

The answer of defendant, Henderson, after denying that he purchased the land of Crawford with notice that plaintiff intended to sell only a life interest to said Crawford, avers that he bought it in good faith, paid nine hundred dollars for it, which was its full value, and had made valuable improvements since his purchase, with the knowledge of plaintiff, amounting to seven or eight hundred dollars. Defendant, Crawford, in his answer, denies every allegation of the petition, except that plaintiff is the widow of Frederick, deceased ; that Henderson was the administrator, and as such sold the land to him and one Smith, and that plaintiff by quit-claim deed conveyed her estate in the lands to him, and that he thereafter conveyed the land to Henderson for a valuable consideration. The circuit court gave judgment for defendants and plaintiff brings the case here by writ of error.

Under any view which can be taken of the case, it is clear that before the relief asked by plaintiff could be granted, the burden was on her to show by clear, strong, and unequivocal evidence, that, at the time plaintiff made the quit-claim deed to Crawford, not only that she intended only to convey a life-time interest, but that Crawford intended to buy only a life interest in the land, and that Henderson purchased the land of Crawford with knowledge of that fact. *Moddrel v. Riddle*, 82 Mo. 31, and cases cited. That plaintiff failed in her evidence to come up to this requirement is apparent from the record, which shows that she and her son were the only witnesses introduced on her behalf.

While the testimony of plaintiff shows that Hender-

son had told her she had only a' life interest in the
homestead, she does not state that she offered to sell only
such interest to Crawford, and on her cross-examination
testified as follows :  "Dr. Crawford paid me two hun-
dred and fifty dollars and an account of sixty-three
dollars for the land.  I asked him if that was the best
he could do and he said that it was.  I told him I would
take it.  Nothing was said about my interest in the land.
I supposed my interest was but a life-time interest, and
supposed he understood it that way.  I do not remem-
ber that he said anything showing that he understood it
that way.  I first spoke of selling place to Crawford
once when Crawford was at Henderson's.  I asked him
if he would not buy the land.  Don't remember of him
referring me to George Smith.  Next spoke to him
about selling the place at his store in Mirabile.  I told
him I wanted to sell the land.  We talked about it a
short time—about five minutes.  I did not tell him what
my interest was in the land.  He did not say what he
thought my interest was.  I just offered to sell.  Noth-
ing said about the price at that time.  Next conversation
was at my son's house on the day of sale."  Reëxami-
nation :  "The land, I suppose, was worth fifteen hun-
dred dollars.  At the time I made the deed to it there
was ninety acres of it."

Noah Frederick testified as follows :  "I am 42 years
old.  Know the land.  Father died March 3,  1874.
Mother made sale of land to Crawford while at my
house.  I talked with Crawford about the trade between
him and mother.  My father's death occurred in 1874 or
1875.  I don't remember which year it was.  My mother
sold only her life estate to Crawford.  I can't relate
conversation between me and Crawford in relation to
selling him the land.  The land was worth twelve hun-
dred dollars.  Think mother and him talked over
the trade before I had any talk with him about it.
It was my understanding that mother was selling but a

life estate. I suppose Crawford understood it that way. I do not remember any conversation between us in which I said her interest was but a life interest, or any in which Crawford pretended to say what her interest was. I think I wrote deed from mother to Crawford at Crawford's store." Cross-examination: "I do not remember exactly what passed between myself and Crawford. I did not tell him mother's interest was but for life only, supposed he understood she claimed only a life estate. I think I delivered the deed after it was executed."

Crawford testified that, when the land was sold by the administrator, that he bought it, paid five hundred and five dollars for it; supposed he would get some interest through the deed; did not know what the interest was; that he afterwards sold to Henderson for nine hundred dollars; that the place was worth eight hundred dollars; that he told Henderson that he had bought Mrs. Frederick's place and that he had a good title. He further testified that, in the negotiations with Mrs. Frederick, she offered to sell him the land, and never mentioned what her interest in it was; that he never asked; that he supposed she had an interest in it, and that if he got her interest he would then have all the title to it.

Henderson testified that he had said to Mrs. Frederick that she had a life-time interest in the land, but that he did not pretend to advise her as to what her interest was; that when he bought the land of Crawford, did not know anything of the terms of sale between Mrs. Frederick and Crawford, or anything to create a suspicion in his mind of Crawford having obtained any advantage over her, or that she might have made a mistake in deeding the land and conveying more than she intended; that Mrs. Frederick never said anything to him as to what she thought her interest was, and that he did not know that she made any claim to the land till

long after he bought it and had made valuable improvements ; that he paid about two hundred dollars more than the land was worth because it lay between two other pieces owned by him.

This evidence fails to come up to the measure of proof required to justify a court in correcting an alleged mistake and reforming a deed. The plaintiff does not testify that she offered to sell Crawford a life interest only in the land, but states that she offered to sell him the land ; that nothing was said by her to indicate that she offered to sell only a life estate, and nothing was said by Crawford to indicate that he believed he was only buying a life interest. Her statement that she supposed she only had a life interest, and that she supposed Crawford understood it that way, is not such clear, positive, and unequivocal evidence as is required in such cases. Crawford, in his evidence, so far from admitting that he believed he was only buying a life interest, claims that he was buying all the title she had. Besides this, there is not satisfactory evidence that Henderson, when he bought of Crawford, had any notice of the alleged mistake in the deed made by plaintiff to Crawford.

The judgment, we think, is for the right party, and is hereby affirmed. All concur, except Judge Ray, absent.